

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

FRANK DEMARTINO,

                            Plaintiff,

              -against-

GUARDIAN ROBERT KRUGER, ESQ.,
NYC BUILDING DEPARTMENT, NYC
POLICE DEPARTMENT, PERI
FORMWORK SYSTEMS, INC., and MILES
& STOCKBRIDGE, P.C.,

                            Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**09-CV-305 (NGG) (LB)**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★  MAR 3 1 2011  ★

BROOKLYN OFFICE

NICHOLAS G. GARAUFIS, United States District Judge.

In his Complaint filed on January 26, 2009, pro se Plaintiff Frank DeMartino ("DeMartino") sued Robert Kruger ("Kruger"), the court-appointed property management guardian for Plaintiff's incapacitated father, Joseph DeMartino; construction equipment supplier PERI Formwork ("PERI") and its attorneys Miles & Stockbridge, P.C. ("M&S"); and the New York City Police Department ("NYPD") and Department of Buildings ("DOB") (together, "the City Defendants"), alleging breaches of fiduciary duty, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and deprivations of due process rights guaranteed by the United States Constitution. (Compl. (Docket Entry # 1) ¶¶ 7-11, 34-77.)

On July 24, 2009, Judge Jack B. Weinstein[1] entered summary judgment in favor of Kruger, PERI, and M&S, and dismissed them from the case. (SJ Order (Docket Entry # 62)). At the time the court issued its first summary judgment order, the City Defendants had not moved for summary judgment. The City Defendants have now moved for summary judgment, and their

---

[1]    On December 14, 2009, Judge Weinstein recused himself from the action and the Clerk of Court re-assigned the case to this court. (Docket Entry # 83.)

1

motion is pending before the court. For the following reasons, the court enters summary judgment in favor of the City Defendants.

## I. BACKGROUND

### A. Undisputed Facts

Because the City Defendants' motion is unopposed,[2] the court considers the following facts, proffered by the City Defendants and supported by documentary evidence, to be undisputed for purposes of this motion. See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004).

Plaintiff claims to have owned a limited liability company named 150 Centreville, LLC, that was the corporate owner of the adjoining lots at 150-20 Centreville Street, Ozone Park, NY ("150-20 Centreville"), and 95-35 150th Road, Queens, NY ("95-35 150th Road") (collectively, "the subject premises"). (Moed Decl. Ex. H (Docket Entry # 93-7), Ex. L (Docket Entry # 93-8).) On December 6, 2007, Justice Charles J. Thomas of New York State Supreme Court, Queens County, entered an order deeming Joseph DeMartino, Plaintiff's incapacitated father, sole owner of 150 Centreville, LLC, authorizing Kruger, as property management guardian for Plaintiff's father, to sell the 95-35 150th Road property, and extinguishing "any rights, interests, and claims of any persons including, but not limited to, FRANK DeMARTINO." (Moed Decl. Ex. R (Docket Entry # 93-9) ("Realty Rights Order") at 4.) The Realty Rights Order showed that Plaintiff had been given the opportunity to attend the hearing at which the court heard argument on the question.

On April 30, 2008, the DOB filed a petition charging that the subject premises were being used for commercial activities in violation of New York City zoning regulations

---

[2]     See infra Part II.A.

2

prohibiting the conduct of commercial activities in a residential zone. (Moed Decl. Ex. G (Docket Entry # 93-7).)  The DOB served the charging document on 150 Centreville, LLC by mailing it to its address of record, and affixing it to the subject premises. (Moed Decl. Exs. H, I (Docket Entry # 93-7).)

By order dated June 17, 2008 (the "Property Removal Order"), Justice Thomas ordered Plaintiff "to remove all construction equipment located at 150-24 Centreville Road[3] and 95-35 150th Street . . . within twenty (20) days." (Moed Decl. Ex. S (Docket Entry # 93-9) ("Property Removal Order").)  The Property Removal Order further provided that, if Plaintiff failed to do so, Kruger would be "authorized to remove and dispose of said equipment as if same were abandoned." (Id.)

Following a hearing on June 25, 2008, the New York City Administrative Law Judge ("ALJ") assigned to hear the DOB's charges recommended, on June 30, 2008, that the Acting Commissioner of the DOB order the premises closed; he did so on July 14, 2008. (Moed Decl. Ex. J, K (Docket Entry # 93-8).)  On November 10, 2008, DOB gave Kruger access to the subject premises after he established that he was the judicially appointed property management guardian for Joseph DeMartino, the owner of 150 Centreville, LLC. (Moed Decl. Ex. T (Docket Entry # 93-10).)  He was again given access to the premises on December 23, 2008, January 22, 2009, February 27, 2009, March 19, 2009, and March 30, 2009. (Id.)  On all occasions Kruger was given access to correct the violations of New York City zoning regulations that had been identified by DOB. (Id.)  On October 13, 2009, a DOB inspector determined that the subject premises had been cleared of equipment, (Moed Decl. Ex. U (Docket Entry # 93-10)), and on

---

[3]      The court interprets the 150-24 Centreville Road address used in the order to refer to the same property referred to by the 150-20 Centreville Street address. (See Moed Decl. Ex. F (Docket Entry # 93-7).)

November 6, 2009, DOB rescinded the closure order (Moed Decl. Ex. W (Docket Entry # 93-10)).

**B.      Plaintiff's Claims against the City Defendants**

Plaintiff alleges that, in the summer of 2008, DOB "obtained a padlock order against the subject property on default, arising from improper service." (Id. ¶ 32.)  Plaintiff alleges that "[d]espite applications to vacate, the administrative judge would not vacate in a rehearsed abuse of power and control. The NYC Department of Buildings aided and abetted in the illegal seizure, the collection of an unlawful debt and violated constitutional rights by granting access to the Centreville Property without specific Court Order, without express authorization from Joseph DeMartino and or Frank DeMartino and without adequate judicial process." (Id.)

Plaintiff alleges that when Kruger obtained permission to access the subject premises on or about November 13, 2008, PERI entered the property to seize "approximately $200,000.00 worth of formwork equipment." (Compl. ¶ 24.)  Plaintiff alleges that the NYPD "aided and abetted the illegal seizure and collection of an unlawful debt by providing police protection for this seizure without specific Court Order, without written authorization from Joseph DeMartino and or Frank DeMartino, and without adequate judicial process. Specifically, the NYC Police Department locked out both Joseph DeMartino and Frank DeMartino from the Centreville Property while the illegal seizure took place under threats of arrest." (Id. ¶ 33.)  Plaintiff further alleges that NYPD officers communicated with PERI and M&S employees "in furtherance of this illegal seizure and collection of an unlawful debt." (Compl. ¶ 29.)

**II.    LEGAL STANDARD**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute

regarding a fact is "genuine" if a reasonable finder of fact, viewing the evidence, could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" when "it might affect the outcome of the suit under the governing law." Elec. Inspectors, Inc. v. Village of East Hills, 320 F.3d 110, 117 (2d Cir. 2003). The burden to show the absence of a genuine factual dispute falls on the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In evaluating a motion for summary judgment, the court is required to "view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Phaneuf v. Fraikin, 448 F.3d 591 (2d Cir. 2006) (quotation omitted).

Where the non-moving party does not respond to the motion for summary judgment, the court may not grant the motion by default. Although the non-movant's failure to respond "may allow the district court to accept the movant's factual assertions as true, the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law." Vermont Teddy Bear, 373 F.3d 241, 246 (citations and quotation omitted). Accordingly, in reviewing a motion for summary judgment—even one that is unopposed—the court must "determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." Id. (internal quotation omitted). The court may accept uncontested affidavits for their truth in summary judgment proceedings. Weinstein v. Albright, 261 F.3d 127, 127 (2d Cir. 2001); C.R.A. Realty Corp. v. Tri-South Investments, 738 F.2d 73, 73 (2d Cir. 1984). The court may grant an unopposed motion for summary judgment "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

## III.   DISCUSSION

### A.   Judge Bloom's Refusal to Extend Plaintiff's Time to Oppose Summary Judgment

Plaintiff objects to Judge Bloom's decision to deny his second untimely request for an extension of time to serve his opposition to the City Defendants' motion. The objection is without merit.

After Judge Weinstein entered summary judgment on July 24, 2009, and recused himself on December 14, 2009, this court, on January 11, 2010, referred the City Defendants' inquiry regarding the court's rules for filing a motion for summary judgment to Magistrate Judge Bloom with the instruction that she should "establish a briefing schedule." (Referral Order (Docket Entry # 86).) Pursuant to the court's order, Judge Bloom set a briefing schedule on January 26, 2010. (First Br. Order (Docket Entry # 87).) Judge Bloom ordered the City Defendants to serve their motion on Plaintiff by February 5, 2010, and directed Plaintiff to serve his opposition on Defense counsel by March 5, 2010. (Id.) The City Defendants served their motion on Plaintiff on February 2, 2010, and gave him notice of the requirements of Federal Rule of Civil Procedure 56 under Local Civil Rule 56.2. (Docket Entry # 93-1.) On March 10, 2010, five days after his response was due, Plaintiff mailed a letter to the court in which he requested additional time to respond to the City Defendants' motion. (Docket Entry # 90.) Judge Bloom extended Plaintiff's time to serve his opposition on the City Defendants, nunc pro tunc, until April 9, 2010, and directed the City Defendants to file the fully briefed motion with the court by April 23, 2010. (Second Br. Order (Docket Entry # 91).) Judge Bloom advised Plaintiff that no further extensions of time would be granted. (Id.) Nonetheless, Plaintiff mailed a second request for an extension of time on April 12, 2010 (Docket Entry # 95), which Judge Bloom denied on April 27, 2010 (Docket Entry # 97). On April 23, 2010, the City Defendants filed their motion for

6

summary judgment, unopposed. (City Mot. (Docket Entry # 93).)  On May 13, 2010, Plaintiff

filed an objection to Judge Bloom's order denying his second untimely motion for an extension

of time. (See Pl. Obj. (Docket Entry # 101-1).)  Attached to the objection was a copy of

Plaintiff's first request for an extension of time (Docket Entry # 90), in which Plaintiff raised

several arguments against Judge Weinstein's first summary judgment order. (See Pl. Obj. Ex. 1.)

 A district court "may designate a magistrate judge to hear and determine any pretrial

matter pending before the court, except a motion . . . for summary judgment . . . .  A judge of the

court may reconsider any pretrial matter under this subparagraph (A) where it has been shown

that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C.

§ 636(b)(1)(A). "Federal Rule of Civil Procedure 72(a) 'requires a district court to consider a

party's timely objections to a magistrate judge's order deciding a "pretrial matter not dispositive

of a party's claim or defense' and to 'modify or set aside any part of the order that is clearly

erroneous or is contrary to law.'" Williams v. Beemiller, Inc., 527 F.3d 259, 264 (2d Cir. 2008).

 The matter referred to Judge Bloom, the establishment of a briefing schedule for a motion

for summary judgment, was a nondispositive pretrial matter within the meaning of Rule 72(a)

and § 636(b)(1)(A).  Judge Bloom's ruling on Plaintiff's motion to extend the briefing schedule

did not "determine the fundamental question of whether [the] case could proceed" nor was it

"functionally equivalent to an order of dismissal." Williams, 527 F.3d at 265-66 (quotations and

alteration omitted).  Though Judge Bloom's order prevented Plaintiff from filing an untimely

opposition to the City Defendants' motion for summary judgment, the court, in considering the

motion for summary judgment, must still independently determine whether "the undisputed facts

entitle [the City Defendants] to a judgment as a matter of law." See Vermont Teddy Bear, 373

F.3d at 246.

7

Federal Rule of Civil Procedure 6(b)(1)(B) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . (B) on motion made after the time has expired if the party failed to act because of excusable neglect." Although Plaintiff concedes that his motions for extensions of time were untimely, he contends that Judge Bloom's decision to deny Plaintiff's motion for an extension of time and to consider the City Defendants' motion unopposed was a "drastic remedy" that failed to accord him the special solicitude to which pro se litigants are entitled. (Pl. Obj. at 6-7.) The record, however, shows that Judge Bloom was considerate of Plaintiff's pro se status in granting his first untimely request for an extension of time, and granted him, in total, sixty-four days[4] to serve his opposition on the City Defendants. Moreover, in light of Judge Bloom's specific warning to Plaintiff that future extensions of time would not be granted (Second Br. Order), Plaintiff was given sufficient notice of the consequences of his non-compliance with Judge Bloom's scheduling order. Accordingly, Judge Bloom's decision to deny Plaintiff's second untimely motion for an extension of time was not clearly erroneous or contrary to law.

In the alternative, the court has also conducted a de novo review of the record and has determined that Plaintiff did not show good cause for an extension of time, or excusable neglect for his failure to file a timely motion for extension of time. See Fed. R. Civ. P. 6(b)(1)(B).

Under any standard of review, Plaintiff's second untimely motion for an extension of time was properly denied. Consequently the court considers the City Defendants' motion for summary judgment unopposed. In deciding the present motion, however, the court will consider the arguments raised by Plaintiff in his first motion for extension of time insofar as they are applicable to the City Defendants' present motion. (See Docket Entry # 90.) See Triestman v.

---

[4]      Including the additional time that Judge Bloom gave Plaintiff when she granted his first untimely motion for an extension of time (Second Br. Order.), Plaintiff had from February 5, 2010, the date the City Defendants were originally instructed to serve their motion on Plaintiff (First Br. Order), until April 9, 2010 to serve his opposition.

8

<u>Fed. Bureau of Prisons</u>, 470 F.3d 471, 474-75 (2d Cir. 2006) ("[T]he submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.") (quotation omitted).

**B.     Standing**

In his order granting summary judgment in favor of Kruger, PERI, and M&S, Judge Weinstein held that the Complaint failed to allege facts sufficient to establish Plaintiff's standing to bring this action, holding that "[P]laintiff does not allege that he owns either the equipment repossessed or the property from which it was taken, [and therefore] lacks standing to bring these section 1983 or RICO claims . . . on his own behalf." (SJ Order at 3.) Plaintiff's § 1983 and RICO claims against the City Defendants suffer from the same defect.

Statements made by Plaintiff in court clearly show that Plaintiff's claims are raised on behalf of his father and on behalf of a company owned by Plaintiff—not on his own behalf. For example, Plaintiff told Judge Weinstein, "I made some errors and I have to add some plaintiffs because the equipment at issue actually belonged to my company." (SJ Hr'g Tr. (Docket Entry # 81) at 2.) Plaintiff also had this exchange with Judge Weinstein:

> MR. DEMARTINO: Yes, I'm seeking return of the property and damages against--
>
> THE COURT: This is personal property?
>
> MR. DEMARTINO: Yes, belonging to my company.
>
> THE COURT: To your company?
>
> MR. DEMARTINO: Yes.

(<u>Id.</u> at 4-5.) Plaintiff also asserts his father's interests in insofar as he alleges that the equipment was owned by Plaintiff's company *and* his father. (<u>Id.</u> at 2.)

9

Plaintiff's claims specifically against the DOB appear to challenge the propriety of the padlock order and the ALJ's refusal to vacate that order, as well as the DOB's decision to give access to the property to Kruger. (Compl. ¶ 32.) Plaintiff did not personally own the subject premises, rather they were owned by 150 Centreville, LLC. (Moed Decl. Ex. L.) Moreover, under the terms of the Realty Rights Order issued by Justice Thomas, any interest Plaintiff had in 150 Centreville, LLC was extinguished. (Realty Rights Order at 4.) Thus, to the extent Plaintiff claims that the DOB violated his rights in issuing the padlock order and refusing to vacate it, or that the NYPD and DOB unlawfully allowed access to the subject premises, Plaintiff asserts the interests of 150 Centreville, LLC, or of his father, not his own.

Plaintiff cannot represent the interests of a corporation before this court because corporations cannot appear in an action through a lay representative. Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305, 1308 (2d Cir. 1991). Plaintiff cannot represent his father's interests before this court because federal law "recognizes that an individual generally has the right to proceed pro se with respect to his *own* claims or claims against him personally, [but] does not permit unlicensed laymen to represent anyone else other than themselves." Berrios v. New York City Housing Authority, 564 F.3d 130, 132 (2d Cir. 2009). While Plaintiff claims to hold a power of attorney giving him the authority to initiate legal proceedings on his father's behalf, this authority would, at most, permit Plaintiff to retain counsel to represent his father's interests before the court, it would not turn Plaintiff into a licensed attorney. Gabayzadeh v. Taylor, 639 F. Supp. 2d 298, 301-02 (E.D.N.Y. 2009) (Bianco, J.); People ex rel. Field v. Cronshaw, 138 A.D.2d 765, (2d Dep't 1988). But even this authority was stripped from Plaintiff by Justice Thomas when he suspended the power of attorney and appointed Kruger as Plaintiff's father's attorney "for all purposes." (See Incapacity Order.) "Because [P]laintiff does not allege that he

10

owns either the equipment repossessed or the property from which it was taken, he lacks

standing to bring these section 1983 or RICO claims . . . on his own behalf." (SJ Order at 3

(citation omitted).)

### C.   Rooker-Feldman Doctrine and Issue Preclusion

Judge Weinstein denied Plaintiff's request to amend his Complaint to add his company[5]

as a plaintiff because any amendment to the Complaint would have been futile. (SJ Order at 3;

see also Tocker v. Philip Morris Cos., 470 F.3d 481, 491 (2d Cir. 2006).)  As Judge Weinstein

observed, the status of the property that had been seized from the subject premises was

"encompassed in preexisting state court litigation." (SJ Order at 3.)  Judge Weinstein, held that

under these circumstances, the Rooker-Feldman doctrine barred him from reviewing the

decisions of the state court. (Id.)  See District of Columbia Court of Appeals v. Feldman, 460

U.S. 462, 482 (1983) ("[A] United States District Court has no authority to review final

judgments of a state court in judicial proceedings."); see also Hoblock v. Albany County Board

of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (quoting Exxon Mobil Corp. v. Saudi Basic

Industries Corp., 544 U.S. 280, 284 (2005)).

In any event, the doctrine of issue preclusion requires the court to accept the decisions of

the state court extinguishing Plaintiff's rights in the subject premises, and declaring the

construction equipment left on the lot to be abandoned.  "Under New York law, issue preclusion

will apply only if (1) the issue in question was actually and necessarily decided in a prior

proceeding, and (2) the party against whom issue preclusion is asserted had a full and fair

opportunity to litigate the issue in the first proceeding." Hoblock, 422 F.3d at 94 (quotation

omitted).  In order to establish standing to bring any of the claims Plaintiff has asserted against

---

[5]   See SJ Hr'g Tr. at 3 ("MR. HA: We're adding Mr. DeMartino's company, TADCO Construction
Corporation, as a plaintiff in the case, Your Honor.")

the City Defendants, Plaintiff would necessarily have to challenge the state court decisions that declared the construction equipment on the subject premises abandoned (see Property Removal Order), or the state court decision that extinguished his rights in 150 Centreville, LLC and the subject premises (see Realty Rights Order). The record shows that Plaintiff was provided a full and fair opportunity to litigate both issues before Justice Thomas. Plaintiff is barred from relitigating these issues before this court. Therefore, permitting Plaintiff any amendment to his Complaint would be futile.

**D.      Section 1983 Due Process Claims**

Plaintiff claims that the DOB and NYPD deprived him of a protected property interest without due process of law when the DOB issued the order of closure, and subsequently provided Kruger with access to the subject premises, and when the NYPD allowed Kruger and PERI to access the subject premises and allowed PERI to remove the construction equipment. (Compl. ¶¶ 48-52; 58-62.) "In a § 1983 suit brought to enforce procedural due process rights, a court must determine (1) whether a property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest." Nnebe v. Daus, No. 09-4305-cv, 2011 WL 1086569, at *8 (2d Cir. 2011). The court has already held that neither Plaintiff nor his company possessed a property interest in the construction equipment seized from the subject premises under the terms of the state court Property Removal Order. Therefore, Plaintiff's § 1983 claims against the NYPD, and those against the DOB that relate to the seizure of the construction equipment must fail.

Plaintiff also argues, however, that the DOB ALJ failed to provide him with sufficient process before DOB ordered the subject premises closed, under N.Y.C. Code § 28-212.2, and when it subsequently granted Kruger access to the subject premises. The DOB gave notice of

the DOB's charges and of the pre-closure hearing (see Moed Decl. Exs. G, I (Docket Entry # 93-7)) to the owner of the subject premises, 150 Centreville, LLC, (Moed Decl. Ex. H) pursuant to the requirements of N.Y.C. Code § 28-212.3. Following that hearing, on June 30, 2008, the DOB ALJ who held the hearing recommended that the Commissioner of the DOB issue a closure order under N.Y.C. Code § 28-212.2 for conducting commercial activities in a residential zone in violation of New York City zoning regulations. (Moed Decl. Ex. J (Docket Entry # 93-8).) On July 14, 2008, the Acting Commissioner of the DOB ordered the subject premises closed. (Moed Decl. Ex. K (Docket Entry # 93-8).) Three days later, 150 Centreville, LLC moved to vacate the order of closure because it claimed the DOB failed to properly serve its petition (Moed Decl. Ex. L (Docket Entry # 93-8)), which the ALJ rejected because she lacked jurisdiction to consider it (Moed Decl. Ex. M (Docket Entry # 93-9)), and which the DOB rejected because it determined that the ALJ found service to be proper (Moed Decl. Ex. N (Docket Entry # 93-9)).

Insofar as Plaintiff argues that he was deprived of due process of law by the DOB when it issued the padlock order without providing him notice, his claim fails because Plaintiff did not hold a property interest in the subject premises—150 Centreville, LLC was the entity that owned the property and was thus, entitled to the protections of due process. Plaintiff cannot represent the interests of 150 Centreville, LLC pro se, and the court is required by principles of issue preclusion to apply the state court Realty Rights Order declaring Plaintiff's father the owner of 150 Centreville, LLC. In any event, the record shows that 150 Centreville, LLC, the owner of the subject premises, was provided sufficient notice of the pre-deprivation hearing and was not denied due process of law. Accordingly, Plaintiff's procedural due process claim against the DOB fails.

13

Furthermore, all of Plaintiff's § 1983 claims against both the DOB and NYPD fail because a municipality, such as the City of New York, cannot be held liable under § 1983 unless the plaintiff can show that a municipal policy or custom caused a deprivation of his constitutional rights. See Monell v. Dep't of Social Services, 436 U.S. 658, 690-91 (1978). The doctrine of respondeat superior cannot be used to establish municipal liability. Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 404-05 (1997). Here, plaintiff does not allege, and nothing in the Complaint suggests, that any of the allegedly wrongful acts or omissions on the part of any New York City employee were attributable to a municipal policy or custom. Thus, plaintiff has failed to state *any* § 1983 claim against the City Defendants.[6]

## IV.   CONCLUSION

Defendants NYPD and DOB have established that there is no genuine dispute as to any material fact with regard to Plaintiff's claims against them, and they are entitled to summary judgment as a matter of law. Consequently, Defendants' motions for summary judgment are GRANTED.

SO ORDERED.

s/Nicholas Garaufis

Dated: Brooklyn, New York                          NICHOLAS G. GARAUFIS
        March 31, 2011                             United States District Judge

---

[6]       In suing two agencies of the City of New York, but not the City itself, Defendant sued the wrong parties. The DOB and NYPD are merely agencies of the City of New York and cannot be independently sued for damages. See N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.").